FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 0 6 2022

TAMMY H. DOWNS, CLERK
By:_____
                    DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

MARK HURT, )
 )
*Plaintiff*, )
 )
v. )  Case No. 2:22-cv-57-LPR
 )
 )  **JURY TRIAL DEMANDED**
 )
SYNGENTA CROP PROTECTION, LLC )
  Serve Registered Agent: )
  CT Corporation System )  This case assigned to District Judge Rudofsky
  120 South Central Avenue )  and to Magistrate Judge Harris
  Clayton, MO 63105 )
 )
and )
 )
SYNGENTA CORPORATION )
  Serve Registered Agent: )
  CT Corporation System )
  120 South Central Avenue )
  Clayton, MO 63105 )
 )
and )
 )
SYNGENTA AG )
  Hold for service )
 )
*Defendants*. )

## COMPLAINT

Plaintiff Mark Hurt brings this cause of action against Syngenta Crop Protection, LLC ("Syngenta Crop Protection"), Syngenta Corporation ("Syngenta Corp."), and Syngenta AG ("Syngenta AG") for personal injuries and damages suffered.

## PARTIES

1. Plaintiff Mark Hurt is a citizen of the State of Arkansas.

2. Syngenta Crop Protection LLC is a limited liability company organized and operating under the laws of the State of Delaware with its principal place of business at 1209 Orange Street, Wilmington, Delaware. It can be served through its registered agent at the address listed in the caption above.

3. Syngenta Corp. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3411 Silverside Road, Suite 100, Shipley Building, Wilmington, Delaware. It can be served through its registered agent at the address listed in the caption above.

4. Syngenta AG is a foreign corporation organized and existing under the laws of Switzerland with its principal place of business at Rosentalstrasse 67, 4002 Basel, Switzerland. Syngenta was formed in 2000 as a result of the merger of Novartis Agribusiness and Zeneca Agrochemicals. Pursuant to Court Order (*see In re: Paraquat Products Liability Litigation*, MDL No. 3004, Case No. 3:21-md-3004-NJR, Doc. No. 414) Syngenta AG can be served via alternative means, including electronic service, with respect to the claims presented herein.

5. Syngenta AG wholly owns, directly or indirectly, Syngenta Corp. and Syngenta Crop Protection LLC.

6. Syngenta AG is a global company that extensively integrates operational, managerial, and financial resources across entity lines. Employees have reporting relationships and carry on activities defined not by corporate relationships but business or operational segments such as crop protection. *See City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 564 (S.D. Ill. 2011) ("[T]he global Human Resources function centrally orchestrates movement of managers between Syngenta entities . . . as if it were managing a single human resources department. These practices demonstrate that personnel technically employed by one

entity actually function as if they were employed by [Syngenta AG] for the use of the Syngenta group of companies.").

7. Within the Syngenta organization, entities and employees share operational systems and services. One website stated that Syngenta AG's Board of Directors "has full and effective control of the company and holds ultimate responsibility for the company strategy."

8. Syngenta AG's Board of Directors also has established an Executive Committee, responsible for operational management of Syngenta entities, including Defendants named herein.

9. Syngenta AG formulates and coordinates global strategy for Syngenta businesses, including crop protection, and maintains central corporate policies under which Syngenta entities, including those named as Defendants herein, operate under the direction, management and control of the Syngenta AG Board, the Executive Committee and/or other global or regional managers.

10. One or more members of Syngenta AG's Board of Directors, Executive Committee and/or other employees have served and/or do serve as member(s) of management teams for Syngenta Corp. and Syngenta Crop Protection LLC.

11. Syngenta entities, including those named as Defendants herein, are subject to high levels of oversight requiring, for example, approval of certain decisions from Syngenta AG, the Executive Committee and/or other higher levels within the functional reporting structure. Appointments of management personnel also may require approval from individuals or bodies higher than each individual entity's respective board of directors or managers.

12. The Syngenta AG Board and/or Executive Committee has authority and control over direction and strategic plans as well as product development, testing, marketing, sales, and product safety policies and practices for Syngenta entities including those named as Defendants herein.

13. Syngenta AG also maintains a central global finance function that governs Syngenta entities including Defendants.

14. Product safety policies and regulatory activities also are handled on a global basis. Syngenta represented in its 2020 Financial Report that through its "global product safety group and global regulatory team, [Syngenta] is committed to developing and registering products that are safe and effective." 2020 Financial Report (https://www.syngenta.com/sites/syngenta/files/bond-investor-information/financial-results/Syngenta-AG-2020-Financial-Report.pdf) at 13.

15. Defendants do not function independently but under the Syngenta AG umbrella. Syngenta AG exercises substantial and pervasive control over such entities, with and through which integrated and symbiotic operations are carried out, including those relating to crop protection and the herbicide at issue. Syngenta AG further induced, directed and itself participated in activities at issue along with the other Defendants.

16. Jurisdictional contacts of Syngenta Corp. and Syngenta Crop Protection LLC are attributable to Syngenta AG because of the unusually high degree of control Syngenta AG exercises over these entities. *See City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550 (S.D. Ill. 2011).

17. In addition or alternatively, upon information and belief, Defendants acted in concert pursuant to agreements or other arrangements to act in a collective manner as agents and/or joint venturers regarding the actions and events that are the subject of this Complaint. All Defendants are therefore jointly and severally liable.

18. Entities within the Syngenta organization regularly refer to themselves as "Syngenta" without further description and unless otherwise indicated, are herein referred to collectively as "Syngenta."

## JURISDICTION AND VENUE

19. This Court has specific personal jurisdiction over each defendant, each of which has offices and employees in Arkansas, itself, its subsidiaries, predecessors, agents and/or assigns purposefully directed numerous activities at Arkansas and its residents, entered into contracts, manufactured, sold and/or otherwise distributed paraquat for use in Arkansas, placed paraquat into the stream of commerce in Arkansas, transacted business, and committed tortious acts in Arkansas from which Plaintiff's claims arise.

20. This Court also has jurisdiction over each defendant under 28 U.S.C. §1332 because there is complete diversity of Plaintiff and Defendants and the matter in controversy exceeds $75,000, exclusive of interest and costs.

21. Venue is proper under 28 U.S.C. §1391 because Defendants conduct business in this District, are subject to jurisdiction in this District, have sold, marketed, and or distributed paraquat within this District, and a substantial part of the acts or occurrences giving rise to this suit occurred within this District.

22. Defendants have and continue, at minimum, to advertise, market, sell, or otherwise disseminate, paraquat in Arkansas and this District. Defendants are registered to do business in this state, have a registered agent for service of process in this state, have offices, employees and agents in this state, have continuously and purposefully directed numerous activities in and at this state and its residents, and have sufficient minimum contacts with Arkansas to satisfy due process requirements.

## FACTUAL ALLEGATIONS

23. Paraquat dichloride (1,1'-dimethyl-4,4'-bipyridinium ion) ("paraquat") is a broad-spectrum, non-residual, contact herbicide used for control of weeds and grasses in agricultural areas, and as a defoliant, desiccant, and plant growth regulator.

24. Paraquat is the active ingredient of herbicides sold under brand names including Gramoxone, manufactured, distributed and sold by Syngenta.

25. Through Syngenta Crop Protection LLC and other entities, Syngenta conducts substantial business in Arkansas including marketing, sale, and distribution of paraquat.

26. Syngenta advertises and promotes Gramoxone through websites, flyers, displays, trade shows, and other marketing materials as a fast-acting, effective herbicide.

27. Paraquat can be used pre-plant or pre-emergence (to a crop or plants), at planting; postemergence, as a desiccant or harvest aid; and as a post-harvest desiccant. It typically is applied by spraying.

28. At all relevant times, use of paraquat for such purposes was intended or reasonably foreseeable to, known to, or foreseen by, Defendants.

29. At all relevant times, it was reasonably foreseeable that when paraquat is used as directed, or in a reasonably foreseeable manner, paraquat users will be exposed thereto while mixing, loading into or emptying from tanks and/or spraying.

30. At all relevant times, it was reasonably foreseeable that when used as directed and/or in a reasonably foreseeable manner, paraquat can and does enter the human body.

31. Syngenta touts itself as committed to safety. It represents, for example, that: "Taking steps to keep . . . business partners safe and healthy is core to our business model, and we recognize it's the most important investment we can make as a company." Syngenta *Thrive* Spring

2018 (https://www.syngenta-us.com/thrive/community/stay-safe-in-agriculture.html). More recently, Syngenta represented that: "As a leader in Health Safety and Environment (HSE), the Syngenta Group will responsibly manage all its activities from product invention to use and disposal. Excellence in HSE performance is essential to ensure business sustainability and the trust of our stakeholders." https://www.syngentagroup.com/en/governance/hse-policy.

32. Paraquat, however, is extremely dangerous to human health.

33. Among other things, if swallowed or inhaled, paraquat may be fatal. It also can cause severe eye injury, is corrosive to the skin, and causes respiratory irritation.

34. Paraquat also can and does cause or contribute to cause Parkinson's disease.

35. Over thirty countries around the world have banned paraquat. Yet Defendants continue to market, distribute, and sell it in the United States.

36. Gramoxone labels warn that the product may be fatal if swallowed or inhaled, may cause eye injury, and is corrosive to skin. In Safety Sheet information, Syngenta discloses these dangers, and states that delayed and immediate chronic effects of exposure are: "Kidney, liver damage, Skin irritation, [and] Respiratory irritation." 2017 Safety Data Sheet, Gramoxone SL 2.0 (https://www.syngenta-us.com/sds-label/gramoxone_sl_2.0); 2019 Safety Data Sheet for Gramoxone SL 3.0 (https://www.syngenta-us.com/sds-label/gramoxone_sl_3.0).

37. Syngenta, however, does not on labels, through advertising, marketing or otherwise, warn that paraquat can and does cause or contribute to cause Parkinson's disease.

38. Parkinson's disease is a chronic, progressive, debilitating disease ultimately leading to death. It is not curable.

39. Defendants knew or should have known the unreasonably dangerous nature of paraquat both at the time of sale and when Plaintiff was exposed to the product. Nevertheless,

7

they did and continued to market, distribute, manufacture and sell paraquat without warning or adequate warning or instruction on safe use.

40. Plaintiff purchased and used paraquat-containing Gramoxone for many years, from the 1990s until he retired in 2018, and particularly in his last years of farming. Plaintiff, a licensed herbicide sprayer, would use paraquat daily during spraying season and then sporadically thereafter for weed control throughout the year. Plaintiff typically sprayed paraquat from his tractor but would at times do spot spraying by hand.

41. Plaintiff has been diagnosed with Parkinson's disease.

42. Prior to his diagnosis, Plaintiff was unaware that exposure to paraquat could cause development of disease such as Parkinson's disease.

43. By contrast, Defendants were and are aware of studies linking paraquat exposure to Parkinson's disease but omitted, concealed, and/or suppressed such information from Plaintiff and others.

44. There has been and continues to be a growing body of scientific evidence linking exposure to paraquat and Parkinson's disease.

45. As an example, a study in 2018 at the University of Guelph found that even low-level exposure to pesticides like paraquat disrupts cells in a way that mimics the effects of mutations known to cause Parkinson's disease. Professor Scott Ryan said: "People exposed to these chemicals are at about a 250-percent higher risk of developing Parkinson's disease than the rest of the population." For persons predisposed for Parkinson's, exposure to paraquat "drastically increases the risk of disease onset." Science News, *Study uncovers cause of pesticide exposure, Parkinson's link* (May 23, 2018) (https://www.sciencedaily.com/releases/2018/05/180523133158.htm).

46. A book written by neuroscientists and neurologists published in 2020, *A Prescription for Action: Ending Parkinson's Disease*, also discusses the association. One of its co-authors, Bastiaan Bloem, MD, states that farmers are at a markedly increased risk of developing Parkinson's. Larry Luxnor, *Dutch Neurologist Warns of 'Parkinson's Pandemic' Linked to Toxic Chemicals* (April 6, 2020) (https://parkinsonsnewstoday.com/2020/04/06/dutch-neurologist-bas-bloem-warns-of-parkinsons-pandemic/).

47. Pesticides generally go through re-registration every fifteen years. The EPA generally does not perform its own testing on products to be registered or re-registered.

48. In June 2019, the EPA reviewed literature and published a (criticized) memorandum concluding that "the weight of evidence was insufficient to link paraquat exposure . . . to [Parkinson's disease] in humans." EPA Memorandum, *Paraquat Dichloride: Systematic review of the literature to evaluate the relationship between paraquat dichloride exposure and Parkinson's disease* (June 26, 2019) at 90.

49. In October 2020, the EPA announced a proposed interim registration review decision for paraquat. The interim decision allows continued use of paraquat but also proposes new measures to reduce risk of exposure. *See* EPA Website, *EPA Proposes New Safety Measures for Paraquat For Release: October 22, 2020* (https://www.epa.gov/pesticides/epa-proposes-new-safety-measures-paraquat). This decision is neither a denial nor an approval of paraquat. Final determination remains pending.

50. The Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. § 136 *et seq.* ("FIFRA") provides that "[i]n no event shall registration of an article be construed as a defense for the commission of any offense under [FIFRA]." 7 U.S.C. § 136a(f)(2).

51. Registration (and re-registration) of a pesticide or herbicide is appropriate only if: its "composition is such as to warrant the proposed claims for it"; the labeling "comp[lies] with the requirements of this subchapter"; "it will perform its intended function without unreasonable adverse effects on the environment;" and "when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(A)-(D).

52. Under FIFRA it moreover is "unlawful for any person in any State to distribute or sell to any person . . . any pesticide which is . . . misbranded." 7 U.S.C. § 136j(a)(1)(E).

53. Under FIFRA statutes and regulations, including 7 U.S.C.A. §§ 136j(a)(1)(e) and 136(q) (F) & (G), Defendants were required, but did not, provide adequate warning and direction for use on Gramoxone labels.

54. Labels must contain warnings, as well as directions for use, adequate to protect against unreasonable adverse effects on health and the environment. *See* 7 U.S.C. § 136 (x) & (bb); 7 U.S.C. § 136(q) (F) & (G); 40 C.F.R. § 156.10(i)(1)(i).

55. Directions for use also "must be stated in terms which can be easily read and understood by the average person likely to use or to supervise the use of the pesticide," 40 C.F.R. § 156.10(i)(1)(i), and contain limitations or restrictions required to prevent unreasonable adverse effects on health and the environment. 40 C.F.R. § 156.10 (i)(2)(x).

56. A pesticide also is misbranded if its labeling is "false or misleading in any particular." 7 U.S.C. § 136(q)(1)(A).

57. With ever-growing strength, multiple studies have found strong association between paraquat and Parkinson's disease.

10

58. Exposure to paraquat caused or contributed to cause Plaintiff's development of Parkinson's disease.

59. As further result, Plaintiff has suffered and will suffer past and future physical disabilities, as well as pain, mental and emotional distress. In addition, Plaintiff has suffered and will suffer past and future loss of wages and/or earning capacity, has incurred and will incur medical expenses for treatment, medication and/or medical devices.

## **COUNT I – STRICT LIABILITY DESIGN DEFECT**

60. Plaintiff incorporates by reference Paragraphs 1–60 as though fully alleged herein.

61. Pursuant to Ark. Code Ann. § 16-116-101, the supplier of a product is liable for harm to another person or his property if: (1) the supplier is engaged in the business of manufacturing, selling or otherwise distributing a product; (2) in a defective condition that rendered it unreasonably dangerous; and (3) was the proximate cause of harm.

62. A manufacturer includes "the designer, fabricator, producer, compounder, processor, or assembler of any product or its component parts." Ark. Code Ann. §16-116-202(3).

63. A product is in defective condition if unsafe for reasonably foreseeable use and consumption. Ark. Code Ann. § 16-116-102(2).

64. A product is unreasonably dangerous if dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product. Ark. Code Ann. § 16-116-202(7)(A).

65. Defendants are in the business of manufacturing, selling and otherwise distributing crop protection products, including paraquat, the active ingredient of herbicides sold under brand names including Gramoxone.

66. Plaintiff used paraquat-containing Gramoxone in a manner reasonably anticipated by Defendants to control weeds in his farming operation.

67. As designed and at the time sold and used by Plaintiff, paraquat was and is unreasonably dangerous in that, among other things, it has the propensity to cause and increase the likelihood of onset of Parkinson's disease.

68. Paraquat was and is unsafe and unreasonably dangerous when put to ordinary and intended use, reasonably foreseeable and actually foreseen by Defendants, and to an extent beyond that which would be contemplated by an ordinary and reasonable buyer, consumer, or user with ordinary knowledge as to its characteristics, propensities, risks, dangers and uses. for anticipated, foreseeable use.

69. The unreasonably dangerous and defective condition of the paraquat-containing Gramoxone, as manufactured, sold and/or otherwise distributed by Defendants, directly and proximately caused or contributed to cause Plaintiff's development of Parkinson's disease and the harms alleged herein.

70. Each defendant knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally or probably result in injury, and continued such conduct in reckless disregard of the consequences. Punitive damages thus are warranted.

### COUNT II – STRICT LIABILITY (FAILURE TO WARN)

In addition or in the alternative to Count I, Plaintiff asserts this Count II for strict liability, failure to warn.

71. Plaintiff incorporates by reference Paragraphs 1–69 as though fully alleged herein.

72. A product is defective under Ark Code Ann. § 16-116-101 if it lacks adequate warning of risks or hazards, or adequate instruction for safe use rendering the product unreasonably dangerous beyond that which would be contemplated by the ordinary buyer.

73. Defendants failed to warn or to provide adequate warning of the danger that paraquat can lead to Parkinson's disease, which they knew or minimally should have known.

74. Defendants further failed to provide adequate instructions on safe use.

75. Adequate warning and instruction were not provided by label or otherwise.

76. Moreover, the labels were false or misleading, and failed to contain necessary warnings and/or directions for use that, if complied with, were adequate to protect against unreasonable adverse effects on human health.

77. As designed and used in anticipated and foreseeable manner, paraquat-containing Gramoxone was and is unreasonably dangerous and defective at the time of sale.

78. In addition or in the alternative, Gramoxone was and is defective for lack of adequate warning and/or instruction on safe use, rendering it unreasonably dangerous for anticipated or foreseeable use at the time of sale.

79. Ordinary users and consumers of Gramoxone, including Plaintiff himself, were unaware of the danger of Parkinson's disease, which by contrast was foreseeable and foreseen by Defendants.

80. Defendants' failure to warn, adequately warn and/or provide adequate instruction for safe use directly and proximately caused or contributed to cause Plaintiff's development of Parkinson's disease and the harms alleged herein.

81. Each defendant knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally or probably result in injury, and continued such conduct in reckless disregard of the consequences. Punitive damages thus are warranted.

## COUNT III – NEGLIGENCE

In addition or in the alternative to Counts I and II, Plaintiff asserts this Count III for negligence.

82. Plaintiff incorporates by reference Paragraphs 1–79 as though fully alleged herein.

83. As manufacturers, sellers, and/or distributors in any sense of paraquat-containing Gramoxone, Defendants have a duty to exercise ordinary care to provide products that are not unreasonably dangerous and to provide adequate warnings and instruction on safe use.

84. Defendants also have a duty of ordinary care to avoid foreseeable harm and to not create, or continue, foreseeable risk of harm to persons including Plaintiff.

85. That duty is to exercise care and caution commensurate with the dangers to be reasonably anticipated under the circumstances.

86. Defendants manufactured, sold and/or otherwise distributed Gramoxone when they knew or should have known that it carries significant and serious risk of Parkinson's disease.

87. Defendants also did so without adequate testing and without disclosure of testing and studies finding association between paraquat and Parkinson's.

88. Defendants also did so without warning, adequate warning, or adequate instructions on safe use. To the contrary, Defendants have represented that paraquat is safe and at minimum, have mislead the public and product users and potential users about its risks in association with Parkinson's disease.

89. Defendants breached their duty of care, which directly and proximately caused or contributed to cause Plaintiff's development of Parkinson's disease and the harms alleged herein.

90. Each defendant knew or ought to have known, in light of the surrounding circumstances, that its conduct would naturally or probably result in injury, and continued such conduct in reckless disregard of the consequences. Punitive damages thus are warranted.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiff respectfully demands judgment from Defendants, jointly and severally, for: (a) all monetary and compensatory relief to which he is entitled and will be entitled at the time of trial; (b) punitive damages; (c) prejudgment and post-judgment interest at the maximum rates allowed by law; (d) all allowable costs of this action; and (e) such other and further relief as appropriate, just and proper.

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: 4/5/2022

Respectfully Submitted,

By: _____

**GRAY, RITTER & GRAHAM, P.C.**

Thomas K. Neill, #2003039AR
Don M. Downing, #30405MO (*pro hac* forthcoming)
Gretchen Garrison, #33963MO (*pro hac* forthcoming)
Kaitlin A. Bridges, #60861MO (*pro hac* forthcoming)
Cort A. VanOstran, #67276MO (*pro hac* forthcoming)
701 Market Street, Suite 800
St. Louis, Missouri 63101
Telephone: (314) 241-5620
Facsimile: (314) 241-4140
tneill@grgpc.com
ddowning@grgpc.com
ggarrison@grgpc.com
kbridges@grgpc.com
cvanostran@grgpc.com